THE DUNES HOTEL, INC., Appellant *v.* ROBERT
C. SCHMUTZER, M. M. SWEENEY and
LAWRENCE HADLUND, a Co-partnership
Doing Business as THE GARDEN CENTER,
Respondents.

No. 4446

April 16, 1962                                    370 P.2d 685

*Jones, Wiener & Jones,* of Las Vegas, for Appellant.

*Harry E. Claiborne,* of Las Vegas, for Respondents.

## OPINION

By the Court, Badt, C. J.:

The parties will be referred to by their abbreviated
names. Schmutzer sued to recover a balance of $10,-
181.02 on a $35,000 written contract to furnish trees,
plants, and landscaping on the grounds of Dunes Hotel
near Las Vegas. Dunes denied Schmutzer's allegations
of the performance of his contract, and as an affirmative
defense alleged that Schmutzer had violated the terms
of his guaranty of "all grass, plants, trees and shrubs
for a period of one growing season, to wit, one calendar
year from the date of installation thereof" early in
July 1955. It alleged that subsequent to October 12,

1955 and prior to the expiration of such period of one year, "substantially all of the trees planted by [Schmutzer] died or were defective * * *," and that, though demanded, Schmutzer had failed, refused and neglected to remedy the situation caused by said death or failure of trees, to Dunes's damage in the sum of $11,500. The trial court found that Schmutzer had performed in accordance with his contract and had satisfactorily landscaped the grounds and installed the plants, trees, shrubs, and lawn area owned by the hotel; that the allegations of Dunes's affirmative defense were untrue, and rendered judgment for Schmutzer in the amount prayed for.

Dunes Hotel contends that it was not "open to a finder of fact" to find the allegations of its affirmative defense untrue because "the evidence presented at the trial in support thereof was uncontroverted." A close examination and analysis of the testimony of the witnesses and the exhibits received in evidence satisfy us that this assertion is without justification.

The written contract was entered into November 3, 1954, and called for the planting and landscaping by Schmutzer at an agreed price of $35,000, on progress payments, with final payment due 30 days after completion. The work was to be done under a "plot plan," which was made a part of the contract. Schmutzer agreed to perform in a good husbandlike manner and in accordance with the highest standards of horticulture and to furnish only the best quality of grass, trees, shrubs, plants, and other material, and, upon the rejection by the hotel of inferior quality trees, etc., to replace the same. He guaranteed all plantings, as aforesaid, for one growing season, namely, one calendar year, from the date of installation. The contract, other than by reference to the plot plan, does not indicate the names of trees, plants, etc., to be installed, and the photostat copy of the map or plot plan attached to the contract, which is part of the record on appeal, is so blurred as virtually to destroy its legibility. However, as the challenge of Schmutzer's performance and the support of

the affirmative defense have reference entirely to the palms and olive trees installed, the testimony of the witnesses supplies the necessary information.

On October 12, 1955, some three months after the completion of the planting and landscaping, Dunes Hotel wrote Schmutzer that it had leased its property for 10 years to Dunes-Sands Hotel Corporation; that the rental moneys were being deposited in escrow and were marked for the benefit of Dunes's creditors; that an audit had been completed indicating that Dunes was indebted to Schmutzer in the sum of $19,962.80; that there was sufficient money available for an immediate payment of 40 percent to creditors and that thereafter distributions would be made to creditors out of rental proceeds every three months and that creditors would be paid in full within 18 to 24 months. The letter thanked Schmutzer for his cooperation and requested his immediate acceptance of the terms offered. Such letter gave no indication that any of the material furnished by Schmutzer was unsatisfactory.

The lessee canceled its lease from Dunes on February 1, 1956. During the period of the lease the Dunes's grounds were maintained and supervised, for the most part, through the head gardener and crew of the Sands Hotel.

Schmutzer had accepted the Dunes's proposition, the 40 percent payment was made, and was followed by partial payments in January, April, July, and November 1956, and April 1957, after which no further payment was made and a balance in the sum of $10,181.02 remained due, owing, and unpaid. Plaintiff filed his complaint for this balance July 8, 1958, some three years after the completion of his work.

Schmutzer testified to his continuous visits to the grounds between July 1955 and July 1956. From his testimony and the testimony of other witnesses it would appear that there had been installed 26 windmill palms, 6 Chamaerops palms and 9 other palms between the main hotel and the highway, making a total of 41 palms, in addition to 24 olive trees. Schmutzer frankly admitted to the poor condition of not more than three palms and

not more than two olives. He testified as follows: "Let me preface my statement with this. Many times a palm tree will lose its entire top or fronds and then come out again, and many times they will come out with a whole new top, and that has happened to us repeatedly on job after job, on hotel jobs after hotel jobs. Now when I say they were dead, I'm not positive they were dead. The fronds had receded on the number I mentioned. Now whether they were dead at that particular time, I did not go and see."

He admitted that after March 1956, Robert Rice, manager of the Dunes, demanded replacement of some of the trees, but stated repeatedly that their condition was due to neglect of the hotel, for which he was not responsible, and refused to replace them without being paid.

Schmutzer rested after his own testimony, and the Dunes's motion for involuntary dismissal was denied. Appellant then called Mr. Rice, who testified that some 30 trees required replacement—20 or more being palms and the rest olives. The hotel then called Monrad McBride, a former employer of Schmutzer, who qualified as an expert in this field, being an owner of a nursery and former head gardener at the Dunes and then at the Sands. He testified that 28 of the palms and 12 of the olives had died.

On rebuttal Schmutzer denied statements by Rice that Schmutzer had agreed to replace trees that Rice claimed were defective. Albert Lackner, former head gardener at the Sands and head gardener and supervisor of the grounds at the Dunes, made a detailed survey of the Dunes's grounds and found three olive trees "pretty badly shot," but which he described as a condition more or less normal in transplanting olives. In any event, these three were subsequently removed when the highway on which the Dunes fronted was widened. During the period involved he made a tour of the Dunes's grounds and checked everything once or twice a week. He conceded that some of the palms were stunted but the fronds were green, that they were in good condition when he left, that it was in the winter season and not the growing season.

The picture may be somewhat clearer when it is understood that the palms were from 15 to 20 feet or more high and were from 20 to 25 years old. They were brought in by truck from California and installed through the use of cranes. The olives were from 17 to 20 years old. Lackner testified, after saying that two of the palms and three of the olives were "in shock," as follows: "The tree, when it is transplanted, particularly an evergreen tree of any variety, suffers a setback in transplanting. Hardwood trees like Olives take a long time to recover from that setback and they also take a long time to die completely from shock. So when I say they were in shock when we took it over and they were still in shock when we released it, I mean there was no essential evidence to say they were better off or worse from the time we took it over until the time we left."

Harry Yavener, the general superintendent of grounds at the Sands Hotel, sent over his gardening crew under Lackner to the Dunes on September 1, 1955, and kept them there until the Sands stopped operation of the Dunes on February 1, 1956. He made numerous inspections of the grounds and the trees during that period. He testified with reference to the palms: "Well, as I recall they were all in pretty good shape by the time they had been in the ground. It takes a little time to establish them, but they were in pretty fair condition for the time they had been in the ground. There was probably one or two that looked like they weren't going to make it but I could not judge whether or not. We were not there long enough." Referring to the olives, he testified: "The Olive trees were in the general condition of Olive trees in this country. When you ship them up and plant them, they have a shock coming up and sometimes it takes two or three years for them to come out of it before they really look like they are going to make it. Some of them looked like they had gone through the stages of shock. There were a couple that did not look too well."

Schmutzer's guaranty did not extend beyond July, 1956. In accepting his testimony and the testimony of

his witnesses Lackner and Yavener and drawing reasonable inferences therefrom, and rejecting the testimony of McBride, the court's findings were substantially supported. There was, then, a substantial compliance by Schmutzer with the terms of the planting and landscaping contract. As to the three palms and the two olives that were in poor condition, but with reasonable chance of recovery, and whose poor condition was due to neglect on the part of Dunes, and at a time when Dunes was in default not only on its original contract but also on its subsequent contract for a composition with its creditors, Schmutzer was justified in refusing to replace them at his own expense.

Under the circumstances recited, where the conflicting evidence is that of expert and experienced gardeners with reference to the condition of aged palm and olive trees, transported to a territory to which they are not indigenous, we find all the more reason for applying the rule that we shall not interfere with the findings of the trial court supported by substantial evidence.

In view of the foregoing, it is unnecessary for us to discuss any other matters suggested by respondents in support of their request for affirmance.

Affirmed.

McNamee and Thompson, JJ., concur.